**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

**FILED**

APR **2 6** 2023

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

| | |
|---|---|
| DAVID WINNETT; SUSAN JACOBSON BAILEY; JEREMY SCOTT; ASHLEY COMBS, AS NEXT OF FRIEND OF L.S., A MINOR CHILD; JUAN SILVA; SHARON VORHEIER; CANDACE KEEN, AS NEXT OF FRIEND OF E.K., A MINOR CHILD; GEORGE R. KEEN, III, AS NEXT OF FRIEND OF E.K., A MINOR CHILD; ERNEST MOLINA; MELISSA MIKULEC; CANDACE HORTON, INDIVIDUALLY AND AS NEXT OF FRIEND OF PAMELA STEEL; JESSICA WILMORE, INDIVIDUALLY AND AS NEXT OF FRIEND OF J.W.; TEXAS WATCH; NATIONAL MEDICAL MALPRACTICE ADVOCACY ASSOCIATION; AND LOLITA SCOTT, PLAINTIFFS, <br><br> V. <br><br> AUSTIN REGIONAL CLINIC; DONALD KREAG MURPHEY, M.D.; AUSTIN RADIOLOGICAL ASSOCIATION; ARA DIAGNOSTIC IMAGING; DAVID J. SHAW, M.D.; RONALD BAKER KING, J.R., M.D.; JOHN RUSSELL BRENNER, D.O.; STAR ANESTHESIA P.A.; STAR ANESTHESIA, PLLC; STAR ANESTHESIA ASSOCIATES, P.L.L.C.; ALAMO WOMEN'S OBSTETRICS AND GYNECOLOGY, PLLC; HERIBERTO TEJADA, M.D.; YVONNE MANALO, M.D.; HON. DARLENE BYNRE, JUDGE OF THE 126TH JUDICIAL DISTRICT COURT, TRAVIS COUNTY, TEXAS; AND HON. DUSTIN M. HOWELL, JUDGE OF THE 200TH JUDICIAL DISTRICT COURT, TRAVIS COUNTY, TEXAS; DEFENDANTS, | CAUSE NO. 1:20-CV-01155-LY |

| | § |
|---|---|
| AND, | § |
| | § |
| TEXAS HOSPITAL ASSOCIATION; | § |
| AND KEN PAXTON, | § |
| IN HIS OFFICIAL CAPACITY AS THE | § |
| ATTORNEY GENERAL OF TEXAS, | § |
| DEFENDANTS-INTERVENORS. | § |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On February 9, 2022, the court called the above-styled case for bench trial.[1] Plaintiffs David

Winnett; Susan Jacobson Bailey; Jeremy Scott; Ashley Combs, as next of friend of L.S., a minor

child; Juan Silva; Sharon Vorheier; Candace Keen, as next of friend of E.K., a minor child; George

R. Keen, III, as next of friend of E.K., a minor child; Ernest Molina; Melissa Mikulec; Candace

Horton, individually and as next of friend of Pamela Steel; Jessica Wilmore, individually and as next

of friend of J.W.; Texas Watch; National Medical Malpractice Advocacy Association; and Lolita

Scott (collectively, "Plaintiffs") appeared by counsel. Defendants Austin Regional Clinic; Donald

Kreag Murphey, M.D.; Austin Radiological Association; ARA Diagnostic Imaging; David J. Shaw,

M.D.; Ronald Baker King, Jr., M.D.; John Russell Brenner, D.O.; Star Anesthesia P.A.; Star

Anesthesia, PLLC; Star Anesthesia Associates, P.L.L.C.; Alamo Women's Obstetrics and

---

[1] Before the court are Plaintiffs' Opening Brief, filed October 20, 2021 (Doc. #65); Defendant-Intervenor Ken Paxton's Motion to Dismiss and Trial Brief, filed October 20, 2021 (Doc. #66); Defendants' Trial Brief in Opposition to Plaintiffs' Request for Declaratory Relief and Permanent Injunction, filed October 20, 2021 (Doc. #71); Defendant-Intervenor Texas Hospital Association's Opening Brief in Opposition to Plaintiffs' Request for Declaratory Relief and Permanent Injunction, filed October 20, 2021 (Doc. #72); Plaintiffs' Reply Brief, filed December 3, 2021 (Doc. #82); Attorney General Ken Paxton's Response to Plaintiffs' Trial Brief, filed December 3, 2021 (Doc. #83); Defendants' Response to Plaintiffs' Opening Brief in Support of Their Request for Declaratory Relief and Permanent Injunction, filed December 3, 2021 (Doc. #84); and Defendant-Intervenor Texas Hospital Association's Response Brief in Opposition to Plaintiffs' Request for Declaratory Relief and Permanent Injunction, filed December 3, 2021 (Doc. #85).

Gynecology, PLLC; Heriberto Tejada, M.D.; and Yvonne Manalo, M.D. (collectively, "Defendants")[2], appeared by counsel. Defendants-Intervenors Texas Hospital Association ("THA")[3] and Ken Paxton, in his official capacity as the Attorney General of Texas (the "Attorney General"),[4] appeared by counsel. Also before the court is the Attorney General's Motion to Dismiss, filed October 21, 2021 (Doc. #66), which the court heard argument for and considered in consolidation with the bench trial.

Having carefully considered the evidence presented at trial, the pleadings, the parties' trial briefs and responses, the applicable law, and the arguments of counsel, the court concludes that Plaintiffs' claims should be dismissed for lack of subject-matter jurisdiction. In so deciding, the court makes the following findings of fact and conclusions of law.[5]

---

[2] On December 17, 2021, Plaintiffs filed a Notice of Recent Decision (Doc. #87), informing the court that due to the opinion issued by the Supreme Court in *Whole Woman's Health v. Jackson*, 142 S. Ct. 522 (2021), Plaintiffs would file a motion to dismiss the judicial defendants in this case. On December 21, 2021, this court dismissed all claims asserted against Defendants Honorable Amy Clark Meachum and Honorable Jan Soifer (Doc. #89). There is no evidence in the record that suggests that either Honorable Darlene Bynre or Honorable Dustin M. Howell have been served with process, and the Supreme Court's edict in *Whole Woman's Health* equally applies. *Id.* at 532 ("As this Court has explained, 'no case or controversy' exists 'between a judge who adjudicates claims under a statute and a litigant who attacks the constitutionality of the statute.'" (quoting *Pulliam v. Allen*, 466 U.S. 522, 538 n. 18 (1984))). Accordingly, this court **ORDERS** that Plaintiffs' claims against Defendants Honorable Darlene Bynre and Honorable Dustin M. Howell are also **DISMISSED**.

[3] The court granted Proposed Defendant-Intervenor Texas Hospital Association's partially Opposed Motion to Intervene on September 8, 2021 (Doc. #51).

[4] The court granted the Attorney General of Texas's Unopposed Motion to Intervene on October 1, 2022 (Doc. #55).

[5] In making these findings and conclusions, the court has considered the record as a whole. All findings of fact contained herein that are more appropriately considered conclusions of law are to be so deemed. Likewise, any conclusion of law more appropriately considered a finding of fact shall be so deemed.

## I. Background

Pursuant to this court's order, Plaintiffs, Defendants and THA filed a Stipulated Record on December 3, 2021 (Doc. #86). As discussed below, the Attorney General did not stipulate to the evidence offered by Plaintiffs.

This cause arises from a federal constitutional challenge by alleged Texas medical malpractice victims[6] to the Texas statutory cap on non-economic damages in health-care-liability actions. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.301-.302 (West 2017) ("Section 74.301" and Section 74.302"). Defendants are the named defendant health-care providers in the underlying medical-negligence actions who Plaintiffs allege will seek to enforce the damage cap challenged herein as defendants in the health-care-liability actions filed by Plaintiffs. Defendant-Intervenor THA is the leadership organization and principal advocate for Texas' hospitals and health-care systems, representing more than 85 percent of the state's acute-care hospitals and health-care systems. Defendant-Intervenor the Attorney General sought intervention to defend the constitutionality of Sections 74.301 and 74.302.

Plaintiffs filed this action against Defendants on November 20, 2020 (Doc. #1)[7], seeking a declaration that (1) the non-economic damage caps of Sections 74.301 and 74.302 violate the Seventh Amendment to the Constitution of the United States by altering the jury's factual

---

[6] Plaintiff Texas Watch is a non-profit corporation whose stated mission is to advocate for preservation of the Seventh Amendment right to trial by jury and to oppose restrictions on that right. Plaintiff National Medical Malpractice Advocacy Association is a non-profit corporation whose stated mission is to advocate for the rights of persons injured by medical negligence. Plaintiff Texas Watch and Plaintiff National Medical Malpractice Advocacy Association are collectively referred to as the "Plaintiff Associations."

[7] Plaintiffs filed their Amended Complaint for Declaratory Judgement Under 28 U.S.C. § 2201 and Injunctive Relief on April 19, 2021 (Doc. #35).

determination of appropriate compensatory damages and thereby rendering the jury verdict merely

advisory and failing to preserve the substance of the common-law right of trial by jury; and (2) the

Seventh Amendment's Preservation Clause applies to the States through the Fourteenth Amendment

to the Constitution of the United States.  In addition to their requests for declaratory relief, Plaintiffs

request that the court permanently enjoin enforcement of the damages caps contained in Sections

74.301 and 74.302.

## II. Analysis

Section 74.301 provides:

(a)     In an action on a health care liability claim where final judgment is rendered against a physician or health care provider other than a health care institution, the limit of civil liability for noneconomic damages of the physician or health care provider other than a health care institution, inclusive of all persons and entities for which vicarious liability theories may apply, shall be limited to an amount not to exceed $250,000 for each claimant, regardless of the number of defendant physicians or health care providers other than a health care institution against whom the claim is asserted or the number of separate causes of action on which the claim is based.

(b)     In an action on a health care liability claim where final judgment is rendered against a single health care institution, the limit of civil liability for noneconomic damages inclusive of all persons and entities for which vicarious liability theories may apply, shall be limited to an amount not to exceed $250,000 for each claimant.

(c)     In an action on a health care liability claim where final judgment is rendered against more than one health care institution, the limit of civil liability for noneconomic damages for each health care institution, inclusive of all persons and entities for which vicarious liability theories may apply, shall be limited to an amount not to exceed $250,000 for each claimant and the limit of civil liability for noneconomic damages for all health care institutions, inclusive of all persons and entities for which vicarious liability theories may apply, shall be limited to an amount not to exceed $500,000 for each claimant.

Section 74.302, which applies only if Section 74.301 is stricken or invalidated, contains an identical

damages limitation to that of Section 74.301, except that Section 74.302 includes certain financial-

responsibility requirements that must be satisfied by health-care providers and physicians seeking to limit civil liability for non-economic damages in any judgment rendered against them.

Under Texas law, "[a]ctual or compensatory damages are intended to compensate a plaintiff for the injury she incurred," and include both economic and non-economic damages. *Hancock v. Variyam*, 400 S.W.3d 59, 65 (Tex. 2013). Economic damages "compensate a claimant for actual economic or pecuniary loss." Tex. Civ. Prac. & Rem. Code § 41.001(4) (West). Non-economic damages "compensate[] a claimant for physical pain and suffering, mental or emotional pain or anguish, loss of consortium, disfigurement, physical impairment, loss of companionship and society, inconvenience, loss of enjoyment of life, injury to reputation, and all other nonpecuniary losses of any kind other than exemplary damages." *Id.* at § 41.001(12).

The questions for the court to decide are: (1) whether the Seventh Amendment's Preservation Clause applies to the states through the Fourteenth Amendment; and (2) whether Sections 74.301 and 74.302 violate the Seventh Amendment. But "before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue." *Whitmore v. Arkansas*, 495 U.S. 149, 154-55 (1990); *see also Perez v. United States*, 312 F.3d 191, 194 (5th Cir. 2002).

The United States Supreme Court has long required strict compliance with this jurisdictional-standing requirement. *See Muskrat v. United States*, 219 U.S. 346, 356 (1911); *Chicago & G. T. Ry. Co. v. Wellman*, 143 U.S. 339, 345 (1892). Federal courts have an independent obligation to ensure that subject-matter jurisdiction exists before reaching the merits of a dispute. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998) ("For a court to pronounce upon a law's meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by

very definition, for a court to act ultra vires."). The court must dismiss an action "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). The court therefore begins with standing.

### A.   *Standing*

The Attorney General challenges Plaintiffs' standing to bring this action. *See* FED. R. CIV. P. 12(b)(1). A federal court's jurisdiction extends only to "Cases" and "Controversies." U.S. CONST. ART. III, § 2. In order to give meaning to Article III's case-or-controversy requirement, courts have developed justiciability doctrines, including standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also National Fed'n of the Blind of Texas, Inc. v. Abbott*, 647 F.3d 202, 208 (5th Cir. 2011) ("'[T]he requirement that a claimant have "standing is an essential and unchanging part of the case-or-controversy requirement of Article III."'" (quoting *Davis v. Federal Election Comm'n*, 554 U.S. 724, 733 (2008)). Because standing is an essential component of federal subject-matter jurisdiction, the lack of standing can be raised at any time by a party or by the court. *See Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005).

The standing doctrine satisfies the case-or-controversy requirement by insisting that a federal plaintiff (1) suffer a concrete and particularized "injury"; (2) that is "traceable" to the defendant; and (3) "redressable" by the court. *Lujan*, 504 U.S. at 560-61; *see also Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000); *Fusilier v. Landry*, 963 F.3d 447, 454 (5th Cir. 2020). All three elements are "an indispensable part of the plaintiff's case," and the party seeking to invoke federal jurisdiction bears the burden to establish them. *Lujan*, 504 U.S. at 561; *see TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) ("Under Article III, federal

courts do not adjudicate hypothetical or abstract disputes. Federal courts do not possess a roving commission to publicly opine on every legal question. Federal courts do not exercise general legal oversight of the Legislative and Executive Branches, or of private entities. And federal courts do not issue advisory opinions."); *see also Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001) ("[T]he power granted to federal courts under Article III 'is not an unconditional authority to determine the constitutionality of legislative or executive acts.'" (quoting *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982))). "[H]owever, the standard used to establish these three elements is not constant but becomes gradually stricter as the parties proceed through 'the successive stages of litigation.'" *In re Deepwater Horizon*, 739 F.3d 790, 799 (5th Cir. 2014) (citing *Lujan*, 504 U.S. at 560-61). "[A]t the final stage, those facts (if controverted) must be 'supported adequately by the evidence adduced at trial.'" *Lujan*, 504 U.S. at 561 (quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 115 n. 31 (1979)); *see Davis*, 554 U.S. at 734 ("While the proof required to establish standing increases as the suit proceeds, the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." (citations omitted)).

The court may not "create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Whitmore*, 495 U.S. at 155-56 (citing *Warth v. Seldin*, 422 U.S. 490, 508 (1975)). Plaintiffs must have standing at the time they file a lawsuit. *See Hollingsworth v. Perry*, 570 U.S. 693 (2013) ("Most standing cases consider whether a plaintiff has satisfied the requirement when filing suit, but Article III demands that an 'actual controversy' persist throughout all stages of litigation." (citing *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90-91 (2013))). Here, the court consolidated the hearing on the motion to dismiss with trial on the merits, so Plaintiffs must prove

8

they have standing by a preponderance of the evidence. *Environment Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 968 F.3d 357, 367 (5th Cir. 2020), as revised (Aug. 3, 2020) ("Because this case was tried, Plaintiffs needed to prove standing by a preponderance of the evidence." (citing *Lujan*, 504 U.S. at 561)); *Cell Sci. Sys. Corp. v. Louisiana Health Serv.*, 804 F. App'x 260, 264 (5th Cir. 2020). Standing to sue must be proven–not merely asserted–in order to provide a concrete case or controversy and to confine the court's ruling within the proper judicial sphere. *Doe v. Tangipahoa Par. Sch. Bd.*, 494 F.3d 494 at 496-97 (5th Cir. 2007).

Plaintiffs seeking prospective relief to prevent future injuries must prove that their threatened injuries are "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013) (citation omitted). The standing doctrine limits the category of litigants empowered to maintain a federal lawsuit seeking redress for a legal wrong. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "In this way, '[t]he law of Article III standing ... serves to prevent the judicial process from being used to usurp the powers of the political branches' and confines the federal courts to a properly judicial role." *Id.* (quoting *Clapper*, 568 U.S. at 408).

Attacks on subject-matter jurisdiction come in two forms, facial attacks on the complaint and factual attacks, which challenge jurisdiction irrespective of the pleadings. *See Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981). With factual attacks, matters outside the pleadings–such as testimony and affidavits–may be considered. *See id.* Facial jurisdiction attacks are directed to the plaintiff's complaint and the court must determine if the plaintiff has sufficiently alleged a basis of subject-matter jurisdiction. *Id.* In a facial challenge to subject-matter jurisdiction, the allegations in the complaint are taken as true for purposes of the motion. *Id.* Here, the Attorney General launches a factual attack to the Plaintiffs' assertion of subject-matter jurisdiction. *See Cell Sci. Sys.*

*Corp.*, 804 F. App'x at 263 ("[A] 'factual attack' under Rule 12(b)(1) may occur at any stage of the proceedings, and plaintiff bears the burden of proof that jurisdiction does in fact exist." (citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). The court therefore may consider admissible evidence outside of the pleadings, and "no presumptive truthfulness attaches to the plaintiffs' jurisdictional allegations." *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981).

The Attorney General contends that this court lacks subject-matter jurisdiction over this case because Plaintiffs lack standing to challenge the constitutionality of Section 74.301. This, he asserts, is because Plaintiffs' alleged injury is speculative, as none of the Plaintiffs have proceeded to trial or secured a jury award of non-economic damages in excess of the statutory threshold. To date, no Defendant has been found liable for any Plaintiff's injury, and no Plaintiff has received a jury award for any amount of non-economic damages. The Attorney General further argues that Plaintiffs have not shown sufficient record evidence satisfying the injury-in-fact requirement. In other words, the Attorney General argues that this case should be dismissed for lack of jurisdiction because Plaintiffs have not alleged an injury-in-fact that justifies prospective relief. *See* FED. R. CIV. P. 12(b)(1).

Plaintiffs assert that a ruling on the substance of their constitutional claim is warranted, as the statutory caps at issue have a direct and immediate impact on Plaintiffs at the threshold of medical-malpractice litigation and at every subsequent stage of such proceedings, beginning with a decision on whether to sue at all. Plaintiffs argue that whether the statutory cap will apply to a jury-trial award affects decisions a plaintiff must make as early as possible, such as the likely extent of recovery in a case, the likely cost of proof relative to that recovery, the extent of justifiable outlays for expert witnesses and other expenses of the presentation of evidence that is often highly technical and extremely costly to acquire, and the evaluation of any settlement offers against those factors and

against the impact, if any, of the statutory cap. Plaintiffs contend that this threat of enforcement constitutes a well-recognized Article III injury.

Because causal-connection and redressability standing requirements appear uncontested, the court will confine its analysis to whether Plaintiffs have suffered an injury in fact.[8]

### I.     "Actual or Imminent" "Injury in Fact"

To establish Article III standing, the injury must be "actual or imminent." *Clapper*, 568 U.S. at 408 (citations omitted); *see TransUnion*, 141 S. Ct. at 2203; *see also Spokeo*, 578 U.S. at 340. "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes–that the injury is *certainly* impending." *Clapper*, 568 U.S. at 409 (quoting *Lujan*, 504 U.S. at 565 n.2). "Thus, [the Supreme Court] [has] repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Clapper*, 568 U.S. at 409 (citations omitted). Plaintiffs must show a "substantial risk that they will suffer the potential future injury absent the requested relief." *Stringer v. Whitley*, 942 F.3d 715, 721 (5th Cir. 2019) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

The Attorney General asserts that because no Plaintiff has gone to trial or produced evidence that Section 74.301 has impacted settlement negotiations, no Plaintiff has proved actual injury. The Attorney General further asserts that there is no admissible evidence establishing a certainly impending or substantial risk of harm, and there is no expert witness or admissible expert opinion. Plaintiffs are required to submit facts through some evidentiary method to prove by a preponderance of the evidence that the trial court has subject-matter jurisdiction. *See Cell Sci. Sys. Corp.*, 804 F.

---

[8] The Plaintiff Associations' associational standing is analyzed below. *See infra* Section II.B.

11

App'x at 264; *see also Environment Tex. Citizen Lobby*, 968 F.3d at 367. Plaintiffs cannot rely on complaint allegations alone to satisfy this burden.

Plaintiffs evidence of standing consists of attorney affidavits and medical documents. The Attorney General asserts that the attorney affidavits are inadmissible as lay-witness opinions, as a lay witness cannot give an opinion based on specialized knowledge or expertise. The Attorney General also asserts that the medical documents are inappropriate lay-witness opinions because they are based on specialized knowledge; further, the Attorney General asserts that because none of the medical documents are affidavits, they are sworn statements by an out-of-court declarant, rendering them hearsay and therefore inadmissible. Without admission of either the attorney affidavits or the medical documents, Plaintiffs present no admissible evidence to support their claim of actual or imminent concrete injury.

Standing based on future possible litigation outcomes has been rejected. *See Whitmore*, 495 U.S. at 159-60 ("It is just not possible for a litigant to prove in advance that the judicial system will lead to any particular result in his case."); *see also Clapper*, 568 U.S. at 413-14. Although Plaintiffs assert that the statutory cap could impact settlement negotiations, not a single Plaintiff has adduced any admissible evidence that settlement negotiations have occurred and were impacted by a named defendant invoking the non-economic damages statutory cap as a bartering chip. Plaintiffs had the burden to prove at trial that Plaintiffs have suffered an injury-in-fact sufficient to confer Article III standing. The inferences on which Plaintiffs' argument rests are too weak; the court cannot simply presume a material risk of concrete harm. As in *Clapper*, Plaintiffs' "theory of *future* injury is too

speculative to satisfy the well-established requirement that threatened injury must be 'certainly impending.'" 568 U.S. at 401 (citation omitted).[9]

"[S]tanding is not created by a declaration in court pleadings," *Mississippi State Democratic Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008), and Plaintiffs offer no more than generalized declarations of attorneys asserting that Section 74.301 will affect the settlement value of their case and litigation strategy. In this case, the court concludes that Plaintiffs do not identify any actual injury. Instead, Plaintiffs theorize that they might someday be injured. *See, e.g.*, *Clapper*, 568 U.S. at 410. A constitutional judgment is not necessary or justified, given the uncertainty that any Plaintiff will proceed to trial or have Section 74.301 applied in its case. The court will dismiss Plaintiffs' claims for lack of subject-matter jurisdiction.

**B.    *Associational Standing***

Plaintiff Associations seek to establish associational standing based upon the injuries of their members. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009); *Texas Democratic Party v. Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006). A plaintiff organization can establish an "injury" with evidence showing one of its members has been concretely affected by defendant's conduct (often referred to as "associational" standing) or evidence showing the organization itself has been

---

[9] Plaintiffs point to *Watson v. Hortman*, No. 2:08-CV-81, 2009 WL 10676569 (E.D. Tex. Mar. 12, 2009) for the proposition that the damages limitations operate to impair the settlement value of the claims and to dissuade counsel from making certain litigation choices in the cases sufficient to demonstrate a present injury that confers Article III standing. The claims in *Watson* were dismissed at the pleading stage. *See id.* at *1; *see also Deepwater Horizon*, 739 F.3d at 799 ("'[T]he standard used to establish these three elements [of standing] is not constant but becomes gradually stricter as the parties proceed through 'the successive stages of litigation.'" (citing *Lujan*, 504 U.S. at 560-61)). And without admissible evidence tending to demonstrate otherwise, this court cannot find that Plaintiffs' averment that "the specter of the limitations causes them to value cases differently for purposes of settlement evaluation and litigation expense budgets," *Watson*, 2009 WL 10676569, at *3, is sufficient to confer Article III standing.

concretely affected by defendant's conduct (often referred to as "organizational" standing). *NAACP v. City of Kyle*, 626 F.3d 233, 237-38 (5th Cir. 2010) (holding nonprofit lacked both associational and organizational standing).  Because the Plaintiff Associations have not alleged organizational standing, the court will proceed with an analysis as to whether the Plaintiff Associations have associational standing.

As associations, the Plaintiff Associations must independently satisfy the requirements of *Lujan* in order to establish standing.  "[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Association of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (noting that first two components of associational standing are constitutional requirements, while third is solely prudential); *see also Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

The Attorney General asserts that the amended complaint does not identify any plaintiff as a member of one (or both) of the Plaintiff Associations, and there is no evidence that any member of either Plaintiff Association would otherwise have standing to sue in their own right, and without evidence that any of its members have standing to bring this lawsuit, both Plaintiff Associations lack standing.  Plaintiffs assert that Plaintiff Associations have members "who make regular use of medical services" and contend that those members may one day be injured and file a health-care-liability lawsuit that might implicate the provision.

The court finds that the Plaintiff Associations–like the individual Plaintiffs–have failed to prove an injury and therefore lack Article III standing. Plaintiff Associations have not shown that "a specific member" within either organization has been affected by a defendant. "While it is certainly possible–perhaps even likely–that one individual will meet all of these criteria, that speculation does not suffice." *Summers*, 555 U.S. at 499. Standing "'is not an ingenious academic exercise of the conceivable'"; it requires "'a factual showing of perceptible harm.'" *Id.* (quoting *Lujan*, 504 U.S. at 566). A statistical probability, even a statistical likelihood, of harm, is insufficient to support standing under current precedent. For instance, an organization lacked standing where it failed to identify a member with more than "a chance" of visiting a particular parcel of the national forest, despite the statistical likelihood that at least one member would visit the parcel. *Summers*, 555 U.S. at 495. Likewise here, all of the Plaintiff Associations' members may one day be injured, but they are not all affected in a categorical way. Unless "all" members are affected by a challenged law, the Plaintiff Associations must identify one member who is. The court finds no allegation that a specific member of either of the Plaintiff Associations has been or will be injured.

The Plaintiff Associations' allegations merely suggest, in the abstract, that some members may be harmed in the future. Such allegations are insufficient for associational standing because the alleged injury is neither concrete nor imminent. *See Lujan*, 504 U.S. at 560; *NAACP*, 626 F.3d at 237; *Benkiser*, 459 F.3d at 587. Because the Plaintiff Associations have not proved that any of the Plaintiff Associations' members would have standing to sue in their own right, the Plaintiff Associations do not have standing to sue on their behalf. *Hunt*, 432 U.S. at 343.

Having concluded that Plaintiffs lack standing–thereby divesting the court of subject-matter jurisdiction– the court need not and does not address Defendants' additional arguments.

### III. Conclusion

For the above and foregoing reasons, the court holds that Plaintiffs lack Article III standing because they cannot demonstrate that the future injury they purportedly fear is certainly impending and shall dismiss Plaintiffs' complaint for lack of jurisdiction.

Because the court conducted a trial on the merits in this matter and concluded that Plaintiffs lack standing after hearing evidence, **IT IS ORDERED** that Defendant-Intervenor Ken Paxton's Motion to Dismiss, filed October 21, 2021 (Doc. #66), is **DISMISSED**.

As this order disposes of all claims raised in this cause, the court will by separate order render a final judgment.

**SIGNED** this _26th_ day of April, 2023.

_____
LEE YEAKEL
UNITED STATES DISTRICT JUDGE